**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| RYAN O'DELL, | : |
| | : |
|     Plaintiff, | : Civil Action No. 22-cv-3647 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| SIERRA ONCOLOGY, INC., ROBERT | : **SECURITIES EXCHANGE ACT OF** |
| PELZER, GAURAV AGGARWAL, M.D., | : **1934** |
| ANDREW ALLEN, M.D., PH.D., MONA | : |
| ASHIYA, PH.D., CRAIG COLLARD, | : **JURY TRIAL DEMANDED** |
| JEFFREY H. COOPER, MBA, STEPHEN G. | : |
| DILLY, MBBS, PH.D., GEORGIA ERBEZ, | : |
| CHRISTY OLIGER, and ANDREW | : |
| SINCLAIR, PH.D., | : |
| | : |
|     Defendants. | : |

---

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Sierra Oncology, Inc. ("Sierra Oncology or the "Company") and the members Sierra Oncology's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Sierra Oncology by affiliates of GlaxoSmithKline plc ("GSK").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on May 2, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Orikum Acquisition Inc. ("Merger Sub"), a wholly-owned subsidiary of GSK, will merge with and into Sierra Oncology with Sierra Oncology surviving as a wholly-owned subsidiary of GSK (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on April 12, 2022 (the "Merger Agreement"), each Sierra Oncology stockholder will receive $55.00 in cash (the "Merger Consideration") for each Sierra Oncology share owned.

1. As discussed below, Defendants have asked Sierra Oncology's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Lazard Frères & Co. LLC ("Lazard") in support of its fairness opinion.

2. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

3. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Sierra Oncology's stockholders or, in the

event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

5. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

6. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

7. Plaintiff is, and has been at all relevant times, the owner of Sierra Oncology stocks and has held such stocks since prior to the wrongs complained of herein.

8. Individual Defendant Robert Pelzer has served as a member of the Board since May 2015.

9. Individual Defendant Gaurav Aggarwal, M.D. has served as a member of the Board since November 2019.

10. Individual Defendant Andrew Allen, M.D., Ph.D. has served as a member of the Board since October 2017.

11. Individual Defendant Mona Ashiya, Ph.D. has served as a member of the Board since November 2019.

12. Individual Defendant Craig Collard has served as a member of the Board since May 2020.

13. Individual Defendant Jeffrey H. Cooper, MBA has served as a member of the Board since March 2016.

14. Individual Defendant Stephen G. Dilly, MBBS, Ph.D. has served as a member of the Board since June 2020 and is the Company's President and Chief Executive Officer of the Company.

15. Individual Defendant Georgia Erbez has served as a member of the Board since June 2021.

16. Individual Defendant Christy Oliger has served as a member of the Board since June 2021.

17. Individual Defendant Andrew Sinclair, Ph.D. has served as a member of the Board since November 2019.

18. Defendant Sierra Oncology is a Delaware corporation and maintains its principal offices at 1820 Gateway Drive, Suite 110, San Mateo, California 94404. The Company's stock trades on the NASDAQ Global Market under the symbol "SRRA."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**A.     The Proposed Transaction**

21. Sierra Oncology, a late-stage biopharmaceutical company, engages in researching, developing, and commercializing therapies for the treatment of patients with hematology and

oncology needs. Its lead drug candidate, momelotinib, is a selective and orally bioavailable Janus kinase 1 (JAK 1), JAK2, and Activin A receptor type 1 (ACVR1) inhibitor. The Company also develops SRA515, a selective bromodomain-containing protein 4 inhibitor; and SRA737, an orally bioavailable small molecule inhibitor of Checkpoint kinase 1. It has the license agreements with Carna Biosciences, Inc. to develop and commercialize SRA141, a small molecule kinase inhibitor targeting Cdc7; AstraZeneca AB; and CRT Pioneer Fund LP. The Company was formerly known as ProNAi Therapeutics, Inc. and changed its name to Sierra Oncology, Inc. in January 2017. Sierra Oncology was incorporated in 2003 and is headquartered in San Mateo, California.

22.     On April 13, 2022, the Company and GSK jointly announced the Proposed Transaction:

> LONDON--(BUSINESS WIRE)-- GlaxoSmithKline plc (LSE/NYSE: GSK) and Sierra Oncology, Inc (Nasdaq: SRRA) today announced that the companies have entered into an agreement under which GSK will acquire Sierra Oncology, a California-based, late-stage biopharmaceutical company focused on targeted therapies for the treatment of rare forms of cancer, for $55 per share of common stock in cash representing an approximate total equity value of $1.9 billion (£1.5 billion).
>
> Myelofibrosis is a fatal cancer of the bone marrow impacting the normal production of blood cells. Anaemia represents a high unmet medical need in patients with myelofibrosis. At diagnosis, approximately 40% of patients are already anaemic, and it is estimated that nearly all patients will eventually develop anaemia.[1,2] Patients treated with the most commonly used JAK inhibitor will often require transfusions, and more than 30% will discontinue treatment due to anaemia.[3] Anaemia and transfusion dependence are strongly correlated with poor prognosis and decreased overall survival.[4]
>
> Momelotinib has a differentiated mode of action with inhibitory activity along key signalling pathways. This activity may lead to beneficial treatment effects on anaemia and reduce the need for transfusions while also treating symptoms. In January 2022, Sierra Oncology announced positive topline results from the

MOMENTUM phase III trial. The study met all its primary and key secondary endpoints, demonstrating that momelotinib achieved a statistically significant and clinically meaningful benefit on symptoms, splenic response, and anaemia.

**Luke Miels, Chief Commercial Officer, GSK** said: "Sierra Oncology complements our commercial and medical expertise in haematology. Momelotinib offers a differentiated treatment option that could address the significant unmet medical needs of myelofibrosis patients with anaemia, the major reason patients discontinue treatment. With this proposed acquisition, we have the opportunity to potentially bring meaningful new benefits to patients and further strengthen our portfolio of specialty medicines."

**Stephen Dilly, MBBS, PhD, President and Chief Executive Officer, Sierra Oncology** said: "Uniting with GSK creates the best opportunity for Sierra Oncology to realise its mission of delivering targeted therapies that treat rare forms of cancer while also delivering compelling and certain value for our stockholders. Now we have a partner with a global infrastructure and oncology expertise that enables us to deliver momelotinib to patients as quickly as possible and on a global scale."

Momelotinib complements GSK's *Blenrep* (belantamab mafodotin), building on GSK's commercial and medical expertise in haematology. The proposed acquisition aligns with GSK's strategy of building a strong portfolio of new specialty medicines and vaccines. If the transaction is completed and momelotinib is approved by regulatory authorities, GSK expects momelotinib will contribute to GSK's growing specialty medicines business, with sales expected to begin in 2023, with significant growth potential and a positive benefit to the Group's adjusted operating margin in the medium term.

**Financial considerations**

Under the terms of the agreement, the acquisition will be effected through a one-step merger in which the shares of Sierra Oncology outstanding will be cancelled and converted into the right to receive $55 per share in cash. Subject to customary conditions, including the approval of the merger by at least a majority of the issued and outstanding shares of Sierra Oncology, and the expiration or earlier termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, the transaction is expected to close in the third quarter of 2022 or before.

The per share price represents a premium of approximately 39 per cent to Sierra Oncology's closing stock price on 12 April 2022 and a premium of approximately 63 per cent to Sierra's volume-weighted average price (VWAP) over the last 30 trading days. Sierra Oncology's Board of Directors has unanimously recommended that Sierra's stockholders vote in favour of the approval of the merger. Additionally, stockholders of Sierra Oncology holding approximately 28 per cent of Sierra's outstanding shares, have agreed to vote their shares in favour of approval of the merger.

GSK will account for the transaction as a business combination and expects it to be accretive to adjusted EPS in 2024, the expected first full year of momelotinib's sales. New GSK reaffirms its full-year 2022 guidance, the medium-term outlook for 2021-2026 of more than 5% sales and 10% adjusted operating profit CAGR* at CER**, and long-term sales ambition.

The value of the gross assets of Sierra Oncology to be acquired (as of 31 December 2021) is $109 million (£83 million at the rate of £1 = $1.312, being the 31 March 2022 spot rate). The net losses of the business were $95 million for the 12 months ended 31 December 2021 (£70 million, at the rate of £1 = $1.38, being the average rate for the period).

* CAGR: Compound Annual Growth Rate; **CER: Constant Exchange Rate

**Advisors**

PJT Partners is acting as financial advisor and Cleary Gottlieb Steen & Hamilton LLP is serving as legal counsel to GSK in connection with the transaction. Lazard is acting as financial advisor and Wilson Sonsini Goodrich & Rosati is serving as legal counsel to Sierra Oncology.

\* \* \*

23.    The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Sierra Oncology's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B.  **The Materially Incomplete and Misleading Proxy Statement**

24. On May 2, 2022, Sierra Oncology filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

25. The Proxy Statement fails to provide material information concerning financial projections by Sierra Oncology management and relied upon by Lazard in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Lazard with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Sierra Oncology management provided to the Board and the Financial Advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

26. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: EBIT and Unlevered Free Cash Flow, but fails to provide line items used to calculate the metrics ***and/or*** a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

27. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

29. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

30. With respect to Lazard's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of enterprise values for Sierra Oncology; (iii) the inputs and assumptions underlying the use of terminal growth rate range of (50%) – (30%); (iv) the inputs and assumptions underlying the use of the range of discount rates of 10.0% to 12.0%; (v) the Company's weighted average cost of capital; (vi) estimated net cash of Sierra Oncology at March 31, 2022; and (vii) the number of fully diluted shares of Company common stock outstanding as of April 8, 2022.

31. With respect to Lazard's *Selected Public Companies Analysis*, the Proxy Statement fails to disclose the financial metrics and multiples for each company selected for the analysis.

32. With respect to Lazard's *Precedent Transaction Multiples Analysis*, the Proxy Statement fails to disclose the financial metrics and multiples for each transaction selected for the analysis.

33. With respect to Lazard's *Premia Paid Analysis*, the Proxy Statement fails to disclose the transactions selected and the premia paid for those transactions.

34. With respect to Lazard's *Research Analyst Price Targets*, the Proxy Statement fails to disclose the equity research analysts and their target stock prices.

35. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting

to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

36. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

39. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were

therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

40. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

41. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

42. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43. The Individual Defendants acted as controlling persons of Sierra Oncology within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Sierra Oncology, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy

Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Sierra Oncology, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Sierra Oncology, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

46. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 3, 2022                                    **MELWANI & CHAN LLP**

                                                                       By:  */s/ Gloria Kui Melwani*
                                                                            Gloria Kui Melwani
                                                                            1180 Avenue of the Americas, 8th Fl.
                                                                            New York, NY 10036
                                                                            Telephone: (212) 382-4620
                                                                            Email: gloria@melwanichan.com

                                                                            *Attorneys for Plaintiff*